Bestjamih Gassmajst, J.
This is a proceeding in the nature of a writ of error coram nobis.
On April 28, 1949, the defendant was convicted after trial before Judge James Garrett Wallace and a jury of murder in the first degree with a recommendation by the jury that the defendant be imprisoned for his natural life. On May 19, 1949, he was sentenced by Judge Wallace to life imprisonment, which sentence he is now serving. The judgment of conviction was unanimously affirmed by the Appellate Division, First Department, on January 23, 1951 (278 App. Div. 555).
On October 19, 1956, the defendant moved for a writ of error ooram nobis to vacate the judgment of conviction on the ground that the court, in sentencing him, failed to comply with the provisions of section 480 of the Code of Criminal Procedure. That proceeding came on to be heard before Hon. Abraham Geller, who denied it on December 6, 1956.
The defendant, on the present motion, asks that the judgment of conviction be vacated and set aside on the ground of fraud, alleged to have been practiced by the District Attorney during the defendant’s trial. In substance, the defendant states that one Florio Peluso, who was indicted jointly with him on the charge of murder in the first degree and who pleaded guilty to the crime of murder in the second degree prior to the commencement of defendant’s trial, testified against him at that trial and that the said Peluso then denied that certain promises were made to him by the District Attorney; that had the jury known of those alleged promises, it might have affected their verdict; that the Assistant District Attorney who tried the case against the defendant “made untrue statements to the Judge at Caruso’s trial during his summation” and allowed Peluso’s alleged false testimony “ to remain uncorrected ”, all of which, the defendant urges, resulted in his not getting a fair trial, and in his not having been accorded due process of law.
In his moving affidavit, the defendant alleges that “ Peluso testified on the trial that, in effect, no promises had been made to him by the prosecutor, in return for his testimony against deponent. As a result of Peluso’s testimony against deponent, he was convicted of murder in the first degree. That at deponent’s trial, not only did the prosecutor permit the false statement of Pelnso to go on being uncorrected, but in addition thereto, the trial prosecutor informed the court and the trial jury and, of course, defense counsel that Peluso was not *105 promised any consideration in return for Ms testimony against deponent. That the prosecutor knew that the foregoing testimony and statements made by PeMso and the prosecutor to the Judge, jury and defense counsel were false but did nothing to correct it ”. It is alleged in the moving papers that on January 13, 1961, Peluso brought on a coram nobis proceeding, on which a hearing was held by Judge (teller on January 25, 1961, and that the minutes of that hearing show that Peluso there testified that he was told by Assistant District Attorneys Keating and Liebler that if he, Peluso, would co-operate and testify against the defendant, he would be permitted to plead guilty to manslaughter; that based upon that promise, Peluso gave a statement to the District Attorney; that later and before Peluso testified against the defendant, he was advised that the court refused to permit him to plead to the crime of manslaughter and that he pleaded guilty to murder in the second degree, and that Assistant District Attorney Liebler told Peluso “ before you get sentenced from the Judge, I will see that you get a manslaughter plea ’ ’; that Peluso testified that ‘ ‘ if he had not been made such promises by the staff of the District Attorney in New York County, that he would not have made the statements and would not have co-operated with the District Attorney ”.
Because of the foregoing, defendant asks that the judgment of conviction against him be set aside.
The printed record on appeal in this case discloses the following:
When Florio Peluso was called as a witness by the People at defendant’s trial for murder, after testifying to the murder of one Kenneth Gray (for whose murder both the defendant and Peluso were indicted), he gave the following testimony on direct examination:
“ Q. You were indicted for murder in the first degree? A. I guess so.
“Q. You know it, don’t you? A. When they took me downstairs I was thinking it over in regards to — I wanted to get it off my conscience. I said, 11 want to go ahead and speak to the D. A.’
11 Q. Did you speak to the D. A.? A. Yes.
“ Q. To whom did you speak? A. Mr. Keating.
“ Q. Was that the same day that the detectives picked you up at the Tombs ? A. Yes, sir.
“ Q. And did you give Mr. Keating a statement? A. Yes, sir.
“ Q. And was it after that that you were indicted for first degree murder ? A. Yes, sir.
*106 ‘ ‘ Q. And yon have taken a plea to murder in the second degree, is that right? A. Yes, sir.”
On cross-examination by James D. C. Murray, who represented the defendant at that trial, Peluso testified as follows: “ Q. You pleaded guilty to murder in the second degree, haven’t you, on account of your part in this case? A. Yes, sir.
“ Q. And you are awaiting sentence before His Honor; is that right? A. Yes, sir.”
In the course of his summation, Assistant District Attorney Liebler stated: “ And Peluso, what is his reward? Reward for what? Reward for making himself a murderer? His Honor will take care of him on the sentence. And let me tell you that Peluso pleaded guilty to his participation in this crime, he pleaded guilty to murder in the second degree before this defendant was put on trial ’ ’.
Indeed, the record shows that On May 19, 1949, Peluso was sentenced to a term of 20 years to life.
It thus appears that the jury, at defendant’s trial, was made aware of the fact that Peluso pleaded guilty to the crime of murder in the second degree and thereby admitted his part in the murder of Kenneth Gray and was then awaiting sentence. However, the defendant urges that the prosecutor concealed from the Trial Judge, the jury and defense counsel, that he promised Peluso that, notwithstanding the fact that he pleaded guilty to murder in the second degree, he, the prosecutor, told Peluso that “ before you get sentenced from the judge, I will see that you get a manslaughter plea ”, and defendant points to the minutes of the coram nobis hearing in Peluso’s case, which he incorporates in his motion, for corroboration of his charge that the District Attorney’s office practiced a fraud upon him, the court and the jury.
The minutes of that hearing disclose the following:
On direct examination, Peluso testified as follows:
“ Q. On March 8th what happened? A. I was taken to Mr. Liebler’s office. I mean I pleaded not guilty.
“ Q. On March 8th you pleaded not guilty. Do you remember what happened on April 18, 1949? A. On April 18, 1949, I withdrew my not guilty plea and pleaded guilty to second degree murder.
“ Q. Now, between March 8, 1949 and April 18, 1949, did you see anybody in the D. A’s office? A. Mr. Liebler.
“ Q. On. how many occasions would you say, to the best of your recollection, did you see Mr. Liebler from the time you *107 pleaded not guilty until the time that you pleaded guilty to murder in the second degree ? A. I think twice I seen him.
‘ ‘ Q. And did you ever talk to Mr. Liebler or did he ever talk to you about a plea in this case? A. Yes, sir.
“ Q. Give us the substance of the conversation? A. He told me I am facing murder one, and if you cooperate and testify against Caruso, I will promise you a manslaughter plea. * * *
“ Q. Now, Mr. Peluso, you say that you spoke with Mr. Liebler about two times before you pleaded guilty? A. Yes, sir.
“ Q. And that the last time was about a week before you pleaded guilty? A. Yes, sir.
“ Q. Can you give us with reference to the question of plea the conversation that you had with Mr. Liebler ? A. He told me that murder two is twenty to life and manslaughter is ten to twenty, so he says, ‘ You plead guilty to murder in the second ’. I said, ‘ Why don’t you give me a manslaughter plea.’ He said, ‘ It will be easier with the jury if you take murder two ’ when I testify against Caruso.
“ Q. How about the manslaughter, did you talk about that? A. I talked about the manslaughter.
“ Q. What was the conversation about that? A. ‘ It don’t look good if I give you manslaughter. It goes too easy ’.”
On cross-examination, Peluso testified:
“ Q. Now, on the date April 18 * * * 1949, the date on which you pleaded guilty, did you have any conversation with Mr. Liebler on that date? A. The 18th?
“ Q. Yes? A. None before the 18th.
‘ ‘ Q. Did you have any conversation with your attorney on that date regarding a plea? A. Yes, with my own attorney.
“ Q. That is, with Mr. Direnzo, is that right? A. Yes, sir.
“ Q. Would you please state the substance of these conversations? A. He says, ‘ You know, murder two, you face twenty to life ’. I said, ‘ I will live up to my bargain. I depend on Mr. Liebler living up to his bargain ’. That’s why I took that murder two rap.
‘‘ the court : What did Mr. Liebler say to you? Did you have a conversation with him on that date, on the 18th?
“ the witness: Yes. I think it was the day before that.
“ the court: What do you say he said to you?
‘1 the witness : He says, ‘ Take the plea to murder two ’, so I says, ‘ Why don’t you give me Manslaughter? ’ He said by taking the plea to murder two it would be easier with the jury ‘ when you testify against Mr. Caruso. ’
“ the court : Was that the total conversation?
“ the witness : Yes.
“ the court: Anything else said by you or by him?
*108 “ THE witness : No, sir.
“ the court: Was your lawyer present that day?
‘ ‘ the witness : I think he was.
“ the court: Now, you gave us the total conversation that took place a day or two before April 18, 1949, is that correct?
“ the witness: Yes, sir.
‘ ‘ the court : And present were you, your lawyer and Mr. Liebler?
‘ ‘ the witness : Yes, sir.
* * #
‘1 Q. Before you took the plea to murder in the second degree, did' Mr. Direnzo tell you that the court would not accept a manslaughter one plea? A. No, I don’t think so.
“ the court: When you say you don’t think so, have you got a doubt in your mind?
“ the witness: You mean if my lawyer told me if I took a manslaughter plea?
“the court: No. The question was, on the day that you pleaded guilty to murder in the second deg’ree, on that date, before you pleaded to murder in the second degree, did your lawyer tell you that the Judge would not accept a plea to manslaughter in the first degree?
‘1 the witness : Yes, your Honor, I think he told me that.
* * *
“ the court: Didn’t you testify just a few minutes ago that you had a discussion with Mr. Direnzo before you pleaded to murder in the second degree on that day, didn’t you testify to that just a moment ago?
“ the witness : I think I did.
“ the court: Did I understand you correctly that you said you were told by Mr. Direnzo that the Judge would not accept a manslaughter in the first degree plea? Didn’t you just say that to me?
“ the witness: Yes.
# * *
“the court: You did have a discussion. In the course of that discussion did Mr. Direnzo tell you anything about the subject that the Judge would not accept a manslaughter in the first plea?
‘ ‘ the witness : I think he did, your Honor.
# # *
“ Q. So, Mr. Peluso, you knew that your alternatives were either to plead guilty to murder in the second degree or to stand trial for murder one? A. Yes, sir.
*109 “ the court: Didn’t your lawyer say to you that if you did not plead to murder in the second degree you would have to stand trial for murder in the first degree?
“ the witness: Yes, sir.
‘ ‘ the court : And that is why you pleaded guilty to murder in the second degree ?
“ the witness: No. I pleaded guilty to murder in the second on the promise of him, Mr. Liebler.
1 ‘ the court: But didn’t you already know from what you just said that when you pleaded to murder in the second degree that your lawyer told you that the Judge would not take manslaughter in the first degree ? Didn ’t you already know that ?
“ the witness: Yes, sir ”.
Called by the People as a witness, Mr. Liebler gave the following testimony on direct examination:
‘ ‘ There came the date of the trial, and I had spoken to Peluso on several occasions, naturally, in preparation for trial and I had told him that if he cooperated for the People I would recommend a plea of manslaughter in the first degree.
“ On the date of the trial the special panel was sitting out in the courtroom, and I moved to sever and try Caruso alone. At this point Peluso and Caruso were codefendants, go I made a motion before Judge Wallace to sever and try Caruso alone.
“ Judge Wallace said to me: ‘ Come up to the Bench ’ I went up to the bench and I know Mr. Direnzo came along. He said, ‘ What are you going to do for Peluso? ’ I said, ‘ I am going to recommend a manslaughter plea,’ and to use his language he said to me,1 You are like hell.’ He said, ‘ He’s going to plead — he’s getting a break — he’s got to plead to murder in the second degree or he goes to trial. ’ # * *
“ go I said to Direnzo, 1 Well, there’s the story.’ Direnzo then went into the pen and spoke to Peluso apparently, and he came out and said, ‘ Well, we are going to take the murder two plea’.
# # #
‘ ‘ the court : Did you make any statement to him that you would subsequently see that the murder two plea would be reduced to manslaughter?
“ THE WITNESS: No.”
At the conclusion of the full hearing, Judge G-eller said: “ Where is there a fraud by Judge Wallace, that Judge Wallace did not carry out a promise or that Mr. Liebler did not keep his promise? Even on the basis of this petitioner’s own testimony, doesn’t he substantially corroborate what Mr. Liebler *110 testified to? Judge Geller, who observed the witnesses at the hearing before him, stated that in order to grant Peluso’s motion it would be necessary for him “ to believe Mr. Peluso and find that Mr. Liebler testified falsely on the basis of his direct testimony that he did not make a promise ”. He refused to do so and denied Peluso’s motion.
The present motion of the defendant is based entirely on the testimony adduced at the Peluso hearing before Judge Geller, and, as pointed out, Judge Geller refused to credit Peluso’s charge of fraud on the part of Mr. Liebler.
Accordingly, the defendant has failed to sustain the burden of proving that any fraud was practiced either on the trial jury, on the court or on him. On the contrary, the record of the defendant’s trial discloses that the jury was made aware of the fact that Peluso pleaded guilty to murder in the second degree, both through the direct as well as the cross-examination of Peluso and that he was then awaiting sentence on such plea. The minutes of the Peluso hearing show that no promise to withdraw Peluso’s guilty plea to murder in the second degree and to substitute in place thereof a plea to manslaughter was made by the District Attorney, and that, as a matter of fact, Peluso was actually sentenced on his original plea to a term of 20 years to life. There is no basis for the present motion. Nor is there any reason for holding a hearing thereon. Accordingly, the motion is in all respects denied.